*Kelly-Brown, et al. v. Winfrey, et al.*

UNITED STATES COURT OF APPEALS

For the Second Circuit

_____

August Term, 2012

(Argued:  September 25, 2012                    Decided: May 31, 2013)

Docket No. 12-1207-cv

_____

SIMONE KELLY-BROWN and OWN YOUR POWER COMMUNICATIONS, INC.,

*Plaintiffs-Appellants*,

—v.—

OPRAH WINFREY, HARPO PRODUCTIONS, INC., HARPO, INC., HEARST CORPORATION, HEARST COMMUNICATIONS, INC., WELLS FARGO & CO., ESTEE LAUDER COMPANIES, INC., CLINIQUE LABORATORIES, LLC, CHICO'S FAS, INC., ABC COMPANIES (1-100), and JOHN DOES (1-100),

*Defendants-Appellees*.

_____

Before:  STRAUB, SACK and CHIN, *Circuit Judges*.

_____

On appeal from judgment entered pursuant to an Order dated March 6, 2012 by the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*) granting Defendants-Appellees' motion to dismiss.  Plaintiff is the owner of a motivational services business named "Own Your Power Communications, Inc.," and has a registered service mark in "Own Your Power."  Defendants published a magazine cover, hosted an event, and built a section of a website all utilizing the phrase "Own Your Power."  Plaintiffs bring suit alleging trademark infringement under the Lanham Act.  The District Court held that the defendants' use of the phrase "Own Your Power" constituted fair use and also held that plaintiffs' claims failed because she failed to meet the threshold requirement of showing use as a mark.  We disagree with the District Court's holding that the defendants have demonstrated fair use and also with its holding that plaintiffs are required to make a threshold showing that defendants' used "Own Your Power" as a mark in order to state a claim for trademark infringement.  We therefore **VACATE** the judgment of the District Court with respect to plaintiffs' trademark infringement, false designation of origin, and reverse confusion claims and **REMAND** for further proceedings not inconsistent with this opinion.  The District Court granted defendants' motion to dismiss plaintiffs' counterfeiting, vicarious infringement, and contributory infringement claims on separate grounds, and we **AFFIRM** with respect to these claims.

Judge SACK concurs in the result in a separate opinion.

————————————————————

PATRICIA LAWRENCE-KOLARAS, The PLK Law Group, P.C., Hillsborough, NJ, *for Plaintiffs-Appellants*.

JONATHAN R. DONNELLAN (Ravi V. Sitwala, Debra S. Weaver, *on the brief*), The Hearst Corporation, New York, NY, Charles L. Babcock, Jackson Walker L.L.P., Houston, TX, *for Defendants-Appellees*.

————————————————————

STRAUB, *Circuit Judge*:

Plaintiff Simone Kelly-Brown ("Kelly-Brown") is the owner of a motivational services business, Own Your Power Communications, Inc., that holds events and puts out publications under the registered service mark "Own Your Power." Defendants Oprah Winfrey ("Oprah"), Harpo, Inc., and Harpo Productions, Inc. (collectively, "Harpo"), and Hearst Corp. and Hearst Communications, Inc. (collectively, "Hearst") were involved in the production of a magazine, event, and website also employing the phrase "Own Your Power." Kelly-Brown argues that in so using the phrase, the defendants infringed upon her mark. She brings suit for claims including trademark infringement, false designation of origin, reverse confusion, and counterfeiting. She also brings suit for vicarious and contributory infringement against Wells Fargo & Co. ("Wells Fargo"), Clinique Laboratories, LLC ("Clinique"), Estee Lauder Cos., Inc. ("Estee Lauder"), and Chico's FAS, Inc. ("Chico's"), which were all corporate sponsors of the allegedly infringing "Own Your Power" event.

Kelly-Brown appeals from the grant of a motion to dismiss in the Southern District of New York (Paul A. Crotty, *Judge*), finding that the defendants' use of the phrase "Own Your Power" was fair use. The District Court dismissed Kelly-Brown's counterfeiting, vicarious infringement, and contributory infringement claims on additional grounds. Because we find that

2

the defendants have not adequately established a fair use defense, we **VACATE** the judgment of the District Court with respect to Kelly-Brown's trademark infringement, false designation of origin, and reverse confusion claims and **REMAND** this case for further proceedings not inconsistent with this opinion. We agree with the District Court's holdings with respect to Kelly-Brown's vicarious infringement, contributory infringement, and counterfeiting claims and therefore **AFFIRM** with respect to these claims.

**BACKGROUND**

The allegations recited below are taken from the complaint, and we assume they are true for the purposes of this appeal.

Kelly-Brown owns a motivational services business organized around the concept "Own Your Power." Kelly-Brown hosts a radio show, holds conferences and retreats, and writes a blog promoting the concept of "owning" one's power. She also has a federally registered service mark in the phrase "Own Your Power."

The service mark registered with the United States Patent and Trademark Office is displayed in a distinctive font that Kelly-Brown uses on her website and other materials, as follows:[1]

*own your power*

The service mark states, "THE COLOR(S) LIGHT BLUE IS/ARE CLAIMED AS A FEATURE OF THE MARK. THE MARK CONSISTS OF LIGHT BLUE SCRIPTED LETTERS WHICH CREATE THE WORDS OWN YOUR 'POWER.'" Kelly-Brown's service mark was registered May 27, 2008.

---

[1] The images discussed in this opinion are also available online at
http://www.ca2.uscourts.gov/Docs/Video_files/12_1207/Kelly-Brown_images.pdf

Defendant Oprah almost needs no introduction, but warrants one in this context. She runs a vast media empire, which consists of, *inter alia*, a magazine, and a website, which is run by Harpo, and (until recently) a television program. Oprah's name and images figure prominently in the branding of these enterprises.

At roughly the same time that Kelly-Brown was seeking to register her service mark in "Own Your Power," the defendants also sought to register a trademark in a new Oprah venture, the Oprah Winfrey Network, to be known as "OWN." During the creation of OWN, Harpo arranged for the transfer of a trademark in "OWN ONYX WOMAN NETWORK" from its original owner to Harpo to avoid an infringement action from that mark's original owner. Defendants would likely have been aware of Kelly-Brown's pending registration for the service mark in "Own Your Power," since the same search defendants would have run to locate and negotiate the transfer of the trademark in "OWN ONYX WOMAN NETWORK" would have also revealed Kelly-Brown's mark.

Kelly-Brown alleges that the defendants infringed upon her service mark by producing a bevy of publications, events, and online content all using the phrase, "Own Your Power." For example, the October 2010 issue of O, the Oprah Magazine (the "Magazine"), which was distributed on or about September 13, 2010, prominently featured the words "Own Your Power" on its front cover. Beneath these words were the sub-headings "How to Tap Into Your Strength"; "Focus Your Energy"; and "Let Your Best Self Shine." It also contained the following headline set off to the right side: "THE 2010 O POWER LIST! 20 Women Who Are Rocking the World."



A103

The Power List therein consisted of a list of people who were influential in various fields, with each serving as an example of a particular "kind" of power. For example, one page contained a photograph of the actress Julia Roberts and a paragraph describing her. Set off from the text is a red circle containing the phrase "THE POWER OF . . . living large."

On September 16, 2010, the Magazine, in connection with various other businesses, including defendants Wells Fargo, Clinique, and Chico's, held an "Own Your Power" event (the "Event"). At the Event, various celebrities posed for promotional photographs in front of an "Own Your Power" backdrop that also contained trademarks for Chico's, Wells Fargo, Clinique, and the Magazine. The Event involved a seminar and workshop offering motivational advice regarding self-awareness, self-realization, and entrepreneurship, under the aegis of the theme "Own Your Power." The Event was subsequently described in the December 2010 issue of the Magazine as the "FIRST-EVER OWN YOUR POWER EVENT."

Following the Event, the Harpo website (the "Website") contained video clips from the Event and placed "Own Your Power" banners and content on at least 75 different individual webpages. Each page containing the "Own Your Power" banner displayed the same header image, with font and graphics that resembled the layout of the October issue of the Magazine. In the center of the banner were the words "Own Your Power!" in a large italicized font. On either side of these words were truncated, colored circles, each containing text. The text inside the left-most circle contained the words, "The Power of . . ." To the right were arrayed other circles containing ellipses followed by the words, ". . . heart," ". . . vision," ". . . one voice," and ". . . seizing the moment."

6



The October issue contained pages with a similar format, with the phrase "the power of . . ." surrounded by various concepts written in colored circles, each beginning with an ellipsis. The "Own Your Power" bannered pages of the website included articles such as, "How to Tap Into Your True Power," "Motivation: One Entrepreneur's Fabulous Story," and "The Secrets of Success." Each page is accompanied by banner advertisements.

Approximately two weeks after the Event occurred, the Magazine's Facebook page displayed photographs taken that evening. On September 27, 2010, Oprah appeared on her television show and displayed the cover of the October 2010 issue of the Magazine. In addition, the December 2010 issue of the Magazine, circulated around November 13, 2010, contained information encouraging readers to view the videos from the Event online at the Website.

Following the Magazine's Own Your Power cover, Kelly-Brown and Own Your Power Communications, Inc. received numerous inquiries from people who appear to have confused Kelly-Brown's services with Oprah's Event, Website, and Magazine. Competition from Oprah has been detrimental to Kelly-Brown's brand.

As a result, Kelly-Brown brought this suit in the District of New Jersey on July 28, 2011, alleging six causes of action under the Lanham Act: trademark counterfeiting, trademark infringement, reverse confusion, false designation of origin, contributory trademark infringement, and vicarious trademark infringement, as well as seven New Jersey state law claims. On November 3, 2011, the District of New Jersey granted a motion to transfer venue of the case to the Southern District of New York.

The defendants moved to dismiss. The District Court granted their motion in its entirety. *Kelly-Brown v. Winfrey*, No. 11 Civ. 7875, 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012). With regard to the Lanham Act claims, the District Court held that the defendants' use of the words Own Your Power constituted fair use. The defense of fair use requires proof that the use was made "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009) (internal quotation marks omitted).

The District Court first reasoned that defendants engaged in a non-trademark use because there was no chance that an observer of the Magazine or Event would believe that they were created by Kelly-Brown and her company. *Kelly-Brown*, 2012 WL 701262, at *3. It noted that Oprah was pictured on the October 2010 Magazine cover, indicating to the viewer who it was that had put forward the Magazine. *Id.* Further, it stated that the placement of the phrase on the Magazine's cover indicated that it was simply a headline describing the contents of the Magazine. *Id.* In deciding that the Magazine Cover employed a non-trademark use of "Own

8

Your Power," the District Court indicated that the satisfaction of the first factor of the fair use analysis alone would be sufficient to dismiss Kelly-Brown's Lanham Act claims, but it went on to discuss the other two elements of the analysis because these, too, it believed, supported its determination that the defendants had engaged in fair use of the phrase "Own Your Power." *Id.* at *4.

Thus, the District Court determined that the use of the words "Own Your Power" was descriptive because it described an action that it hoped that Magazine readers would take after reading the Magazine. *Id*. at *4-5.

Finally, the District Court held that the defendants did not exhibit bad faith in using the mark. It decided that Kelly-Brown had pleaded no facts that plausibly suggested that the defendants intended to capitalize on her good will. *Id*. at *6. It reasoned further that there was no likelihood of consumer confusion because the font, color, and formatting of the defendants' use was significantly different from that protected by Kelly-Brown's registered service mark. *Id*. The District Court therefore held that all three of the elements of the fair use defense were met.

Having found that the defendants' use constituted fair use, the District Court went on to dismiss Kelly-Brown's trademark infringement, reverse confusion, and false designation of origin claims on that basis. *Id*. at *6-7. With regard to contributory and vicarious trademark infringement, it held that those claims should be dismissed because there was no primary infringement to which any defendant could have contributed, and because Kelly-Brown had not adequately alleged a partnership or agency relationship among any of the defendants. *Id*. at *7-8.

The District Court then dismissed Kelly-Brown's trademark counterfeiting claim because there was no evidence that the defendants' use was identical in appearance to her own. *Id*. at *8-9. Because it found that Kelly-Brown's complaint must be dismissed for all the above reasons, it

9

declined to reach the defendants' First Amendment arguments. *Id*. at *9. The District Court also declined to exercise supplemental jurisdiction over Kelly-Brown's state law claims, thereby dismissing her complaint in its entirety. *Id*.

This timely appeal followed.

## DISCUSSION

On an appeal from a grant of a motion to dismiss, we review de novo the decision of the district court. *Capital Mgmt. Select Fund Ltd. v. Bennett,* 680 F.3d 214, 219 (2d Cir. 2012). We accept all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 36 (2d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Kelly-Brown brings suit pursuant to §§ 32 and 43 of the Lanham Act. 15 U.S.C. §§ 1114, 1125. Section 32(1)(a) of the Lanham Act prohibits any person from "us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43(a) similarly prohibits any person from "us[ing] in commerce," in connection with any goods or services, "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods [or] services . . . by another person . . . ." 15 U.S.C. § 1125(a)(1).

10

With one exception we discuss below, defendants here do not argue that Kelly-Brown has failed to adequately allege the elements of an infringement claim. Rather, the defendants argue, as the District Court decided, that their actions are protected by the doctrine of fair use. Before we discuss the substance of that defense, it is helpful as background to observe that the Lanham Act protects marks from two kinds of confusion. It protects against direct confusion, where there is a likelihood that consumers will "believe that the trademark owner sponsors or endorses the use of the challenged mark." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 62 (2d Cir. 2000). It also protects against so-called "reverse confusion," where the consumer will believe "that the junior user is the source of the senior user's goods." *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988). In reverse confusion cases, consumers may believe that the senior user is "an unauthorized infringer, and the [junior user's] use of the mark may in that way injure [the senior user's] reputation and impair its good will." *Id*. Kelly-Brown here alleges that defendants' repeated use of the phrase "Own Your Power" causes reverse confusion within the market for motivational services and publications, and therefore infringes her service mark in that same phrase.

In order to make a successful fair use defense to a trademark infringement claim, the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith. *See* 15 U.S.C. § 1115(b)(4); *EMI Catalogue P'ship*, 228 F.3d at 64. The defendants offer only this narrow challenge to the adequacy of Kelly-Brown's pleading of infringement: that the first element of a fair use defense, use as a trademark, is a threshold requirement for adequately alleging a claim of infringement. That is to say, if Kelly-Brown has not satisfied the "as a mark" requirement, her infringement claims fail as a matter of law. We consider this argument and then discuss defendant's fair use defense.

11

## I.    Trademark Use as a Threshold Requirement

In its analysis the District Court stated that unless Kelly-Brown showed that the defendants used the phrase "Own Your Power" as a trademark, her claim must fail as a matter of law. *Kelly-Brown*, 2012 WL 701262, at *4. The defendants advance the same argument on appeal. Defendants claim that our prior decisions and law from the Sixth Circuit support the conclusion that use as a mark is a threshold requirement. We conclude that defendants misinterpret our prior law, and we conclude that the Sixth Circuit's analysis does not comport with our law on consumer confusion.

In interpreting our prior decisions, defendants conflate two distinct concepts, use *of* a trademark in commerce and use *as* a mark, both of which, confusingly, we describe by the shorthand phrase "trademark use." Plaintiffs are required to show "use in commerce" as an element of an infringement claim. *See* 18 U.S.C. §§ 1114(1)(a), 1125(a)(1). The Lanham Act defines "use in commerce" as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--
>
> (1) on goods when--
>
> (A) it is placed *in any manner* on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce, and
>
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127 (emphasis added).

A plaintiff is not required to demonstrate that a defendant made use of the mark in any particular way to satisfy the "use in commerce" requirement. The element is satisfied if the mark is affixed to the goods "in any manner." 15 U.S.C. § 1127; *see also Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 125-26, 129 (2d Cir. 2009) (holding that Google's use of the plaintiff's trademark as a keyword to trigger the display of the advertiser's copy on Google's search results page and as a suggestion to advertisers as a keyword they might purchase were sufficient to satisfy the "use in commerce" requirement).

Defendants do not argue that Kelly-Brown has not satisfied the "use in commerce" requirement. Such an argument would be unavailing in any event. The defendants have certainly used the words "Own Your Power" in commerce. The words "Own Your Power" appeared prominently on the front cover of the Magazine—a good for sale—and on the Oprah Website, which contained banner advertisements alongside "Own Your Power" content.

The analysis we conduct when considering whether a defendant has used a mark in commerce contrasts sharply with the inquiry we conduct when, as here, we are considering whether the defendant used a competitor's mark "as a mark." In determining whether a particular use is made "as a mark," we ask whether the defendant is using the "term as a symbol to attract public attention." *JA Apparel Corp.*, 568 F.3d at 400.

In *JA Apparel*, the defendant sold an eponymous clothing line; he subsequently began a new clothing line and ran print ads for the line that included his trademarked name. *Id*. at 392. We suggested, without deciding, that our conclusion as to whether defendant was using his own name as a mark would differ depending on the content of the ad he ran. *Id*. at 402. We suggested that an ad which contained, in small text, the words "Designer Joseph Abboud in a 2 Button Super 120 S Charcoal Chalkstripe from His Fall 2008 Jaz Collection," would be a use of

defendant's name that was not a mark. *Id.* By contrast, we suggested that an ad which contained the words, "A New Composition by JOSEPH ABBOUD," in larger text than the name of the new brand, would be use as a mark. *Id.* When determining whether a defendant has used something "as a mark," we must conduct a close examination of the content and context of the use.

Thus, in determining whether the plaintiffs have satisfied the "use in commerce" requirement, we ask whether the trademark has been displayed to consumers in connection with a commercial transaction. In determining whether a use is made "as a mark," however, we make a more detailed determination of the particular manner in which the mark was used.

In arguing that "trademark use" is a threshold requirement, defendants rely upon *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 411-12 (2d Cir. 2005). They cite *1-800 Contacts* for the proposition that "'use' must be decided as a threshold matter." *Id.* at 412. An examination of the surrounding text makes clear that *1-800 Contacts* refers not to use *as* mark, but rather use *of* a mark in commerce. This passage reads,

> Not only are "use," "in commerce," and "likelihood of confusion" three distinct elements of a trademark infringement claim, but "use" must be decided as a threshold matter because, while any number of activities may be "in commerce" or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the "use" *of* a trademark.

*Id.* (emphasis added). While we held in *1-800 Contacts* that demonstrating use in commerce is a threshold burden on plaintiff, we have never so held with regard to use "as a mark." Defendants are therefore incorrect that our case law requires plaintiffs to demonstrate they have used Own Your Power "as a mark" in order to adequately allege a cause of action for trademark infringement.

Defendants also rely upon Sixth Circuit law for the proposition that use *as* a mark is a threshold requirement for a Lanham Act claim. The Sixth Circuit, unlike this Circuit, has held

14

that use *as* a mark is a threshold requirement.  *See Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009); *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694-95 (6th Cir. 2003).  The Sixth Circuit has extrapolated this requirement not from the "use[] in commerce" element of the statute, 15 U.S.C. §§ 1114(1)(a), 1125(a)(1), but rather from the consumer confusion element, reasoning that in instances where the defendant does not use the mark as a designation of origin, consumers are unlikely to be misled as to the source of the goods.  *Hensley Mfg.*, 589 F.3d at 610; *Interactive Prods.*, 326 F.3d at 695.

The Sixth Circuit's approach does not cohere with our jurisprudence on consumer confusion.  In determining whether there is a likelihood of consumer confusion, we apply the eight-factor balancing test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961).  "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market."  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009).  "The application of the *Polaroid* test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'"  *Id.* (quoting *Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005)).

The Sixth Circuit has made a judgment that no consumer will be confused unless the defendant is using the infringing content as a mark.  But the *Polaroid* test, which we have long used, is a fact-intensive inquiry that depends greatly on the particulars of each case.  To elevate

15

one particular consideration, which is not even one of the eight *Polaroid* factors, above all of the other factors would be inconsistent with this Circuit's approach to Lanham Act cases.

Moreover, although we have never decided this precise issue, we have previously allowed certain claims to proceed even where the defendant is not using the plaintiff's mark as a mark. *See, e.g.*, *EMI Catalogue P'ship*, 228 F.3d at 64, 67-68 (holding that material issues of fact existed as to whether use of the slogan "Swing Swing Swing," playing off of the trademarked song title "Sing Sing Sing (with a Swing)," was fair use, notwithstanding our holding that the slogan was not used as a mark); *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005) (holding that defendant's handbag meant to evoke Louis Vuitton's trademarked handbags could create consumer confusion even in the absence of an allegation that the defendant was attempting to establish its design as a competing mark). The Sixth Circuit's test would lead to the dismissal of these claims without addressing what is beyond doubt the central question in considering consumer confusion: whether consumers were actually confused by the allegedly infringing product.

We therefore decline to adopt the rule that Lanham Act plaintiffs must show that the defendant was using the allegedly infringing content "as a mark" as a threshold issue in order to establish consumer confusion.

**II.      Fair Use**

In order to assert a successful fair use defense to a trademark infringement claim, the defendant must prove three elements:  that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith. *See* 15 U.S.C. § 1115(b)(4); *EMI Catalogue P'ship*, 228 F.3d at 64.  Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss.  Affirmative

16

defenses may be adjudicated at this stage in the litigation, however, where the facts necessary to establish the defense are evident on the face of the complaint. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Plaintiffs, in rebutting defendants' arguments, are held only to the usual burden of a motion to dismiss, *id.*, which is to say they must plead sufficient facts to plausibly suggest that they are entitled to relief, *Iqbal*, 556 U.S. at 678.

Defendants here note that the mere fact that someone owns a mark that contains a particular word or phrase does not grant the holder the exclusive right to use that word or phrase commercially. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992) ("The fair use doctrine is based on the principle that no one should be able to appropriate descriptive language through trademark registration."). "[T]he owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark," *EMI Catalogue P'ship*, 228 F.3d at 64, and so where another person uses the words constituting that mark in a purely descriptive sense, this use may qualify as permissible fair use.

We now consider whether the defendants have satisfied each element of a fair use defense in turn.

*A. Trademark Use*

As noted above, in determining whether the defendants were using the words "Own Your Power" as a mark, we ask whether they were using the term "as a symbol to attract public attention." *JA Apparel*, 568 F.3d at 400 (internal quotation marks omitted). Kelly-Brown alleges that the defendants used the phrase "Own Your Power" in several unique instances and that these collectively constitute use as a mark. She provides allegations regarding several such uses, including: (1) the October Issue of the Magazine, featuring the phrase in the center of the Issue's cover; (2) the Own Your Power Event, billed as the "first ever," that featured

17

motivational content; (3) promotion of the Event through social media; and (4) the online video from the Event and other motivational articles provided on an "Own Your Power" section of Oprah's website. Kelly-Brown argues that, taken together, these uses suggest that the defendants were attempting to build an association with consumers between the phrase "Own Your Power" and Oprah.

At this stage in the litigation, this array of uses is sufficient for us to infer a pattern of use. We thus conclude that Kelly-Brown has plausibly alleged that Oprah was attempting to build a new segment of her media empire around the theme or catchphrase "Own Your Power," beginning with the October Issue and expanding outward from there. We have recognized that established companies are allowed to seek trademarks in sub-brands. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2d Cir. 1976). Kelly-Brown's complaint implies that Oprah is a brand and is therefore the ultimate source of all things related to that brand, but that defendants sought to use the phrase "Own Your Power" to denote a particular line of services and content within the larger Oprah brand.

Defendants counter that this case is on all fours with *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 633 (7th Cir. 2001). There, the Chicago Tribune published a newspaper with the headline "The Joy of Six" after the Chicago Bulls won their sixth basketball championship. *Id*. at 634. Plaintiff claimed she had a trademark in the phrase. *Id*. The Tribune later reproduced this front page on various promotional items. *Id*. The Seventh Circuit concluded that this use was merely a headline, rather than a use as a mark, because the Tribune's masthead clearly identified the source of the newspaper, and because the sports memorabilia at issue in the case was more readily identifiable with the Tribune brand name than with the phrase "Joy of Six." *Id*. at 639-40. Defendants rely on *Packman* to argue that their use of the phrase "Own Your Power"

18

was similarly only a headline and that the subsequent use in connection with the Event and on the Website were derivative of this use.

Defendants' use of the phrase "Own Your Power" was much different than the Chicago Tribune's use of the phrase "The Joy of Six." Defendants' use was far more wide-ranging and varied. At least with respect to the Website, the content was not merely derivative of the October Issue in the sense that the promotional items in *Packman* were derivative of the original headline. In *Packman*, the promotional hats and T-shirts plaintiff alleged infringed her trademark merely reproduced the front page of a particular issue of the Chicago Tribune. By contrast, the articles on the Website here contained unique content that was not previously published in the October Issue of the Magazine. The webpages attached to the complaint do not even directly reference the October Issue, its cover page, or its content. A viewer of these pages could easily read their copy without realizing that an issue of the Magazine had ever so much as used the phrase "Own Your Power."

The Complaint provides few allegations regarding what happened at the Event. It was, however, referred to as the "first-ever" of its kind, suggesting that it was not directly tied to a particular issue of the Magazine, but instead was to be a recurring enterprise within the Oprah media empire.

Courts are more likely to treat recurring themes or devices as entitled to protection as a mark, even where a single iteration might not enjoy such protection. The titles of literary series enjoy more protection as marks than single works of artistic expression. *Compare EMI Catalogue P'ship*, 228 F.3d at 63 (holding that a single work of artistic expression is entitled to protection if the title has acquired secondary meaning) *with* 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 10:7 (4th ed. 2012) ("[S]econdary

19

meaning need not be proven for an inherently distinctive title of a literary series, newspaper, periodical, television series or the like."). Similarly, courts have protected advertising slogans under the theory that companies have devoted a great deal of time and expense into creating an association in the minds of consumers between a slogan and a particular product. *See, e.g.*, *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1227-28 (7th Cir. 1993); *Cont'l Scale Corp. v. Weight Watchers Int'l, Inc.*, 517 F.2d 1378, 1379-80 (C.C.P.A. 1975); *Chem. Corp. of Am. v. Anheuser-Busch, Inc.*, 306 F.2d 433, 436 (5th Cir. 1962).

Repetition is important because it forges an association in the minds of consumers between a marketing device and a product. When consumers hear a successful slogan, for example, they immediately think of a particular product without even being prompted by the product's actual name. When they encounter the title of a popular literary series, they will recognize, just based on the name, that the work is one of that series and is therefore the work of a particular author. The slogan or title becomes a symbolic identifier of a product or product line through repetition.

It is adequately alleged in the complaint that the defendants were trying to create, through repetition across various forms of media, a similar association between Oprah and the phrase "Own Your Power." The defendants began to create the association between that phrase and Oprah with the cover of the October Issue of the Magazine, and continued to encourage it through both the Event and the Website. Each of these employed usages of the phrase "Own Your Power" involved separate content and context, and thus it is plausible that the defendants were attempting to build up a line of wide-ranging content all denoted by the phrase "Own Your Power." "Own Your Power," through these interrelated uses, would thus become symbolic shorthand for the products and message as a whole, meant to remind consumers of a particular

20

kind of Oprah-related content. Thus, plaintiffs have alleged that this repeated and wide-ranging usage of the phrase "Own Your Power" functioned as a mark. Of course, further information may emerge during discovery that undermines Kelly-Brown's theory that Oprah's use was an attempt to create a sub-brand, but her allegations are sufficient at this stage.

The fact that Oprah's (household) name was also attached to the Magazine, the Website, and the Event does not suffice to demonstrate that "Own Your Power" was not also employed as a mark in each of its uses by defendants. It is well established law that both a slogan and a single brand name can serve as co-existent marks. *See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1338-39 (2d Cir. 1975) (holding that "Steinway The Instrument of Immortals" was a properly "registered slogan" notwithstanding the fact that Steinway itself was also a protected mark); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992) ("Nor is a defendant's use of a term in conjunction with its own trademark *per se* a use other than as a trademark." (internal quotation marks omitted)); 1 MCCARTHY ON TRADEMARKS § 7.21 ("The fact that a slogan is used in conjunction with a previously existing trademark does not mean that the slogan does not also function as a mark, for a product can bear more than one trademark.").

To be sure, we have previously noted that "the prominent display of the defendants' own trademarks" can contribute to a finding that the defendants were not using a different distinct phrase as a mark. *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (2d Cir. 1997). In *Cosmetically Sealed*, a lipstick manufacturer had a display of trial-sized lipsticks as well as complimentary postcards that customers were encouraged to use to test the lipsticks. *Id.* at 29. The display featured the words, "Seal it with a Kiss!!" which another lipstick manufacturer, the plaintiff, used as a slogan, and in which the plaintiff held a valid

trademark. *Id.* We there held that such use was not done "as a mark." But *Cosmetically Sealed* did not announce a rule that all use was other than "as a mark" if the defendant also displayed a different mark, such as Oprah's name in this case, in close proximity. Rather, this fact was one of several considerations in a fact-intensive analysis. Also crucial to our finding there was the fact that "[t]he challenged phrase [did] not appear on the lipstick itself, on its packaging, or in any other advertising or promotional materials related to [the defendant's] product." *Id.* at 31. The words "Seal it with a Kiss!!" thus did not help to identify the product in any context but a single advertising campaign. The defendants' use of the phrase "Own Your Power" here was not similarly tangential.

Kelly-Brown therefore has plausibly alleged that the defendants intended to create a new line of products and services offered by Oprah under the mark "Own Your Power." Defendants thus have not met their burden at this stage in the litigation in demonstrating that their use of the phrase "Own Your Power" in its various iterations was use other than as a mark.

*B. Descriptive Sense*

The next element of a fair use defense is that the disputed use was in a descriptive sense. Defendants argue that the use of the phrase "Own Your Power" was descriptive of the publications to which that phrase was attached. They argue that the use of the phrase on the Magazine's cover describes its contents and also "served as an exhortation for readers to take action to own their power and described a desired benefit of reading the Magazine Issue." They further assert that subsequent uses of the phrase in connection with the Event, on the Website, etc., were merely referring back to this original, approved use.

At the outset, it should be noted that the phrase "Own Your Power" differs from the sort of phrase which courts usually find to be used descriptively. Courts more readily find a phrase

descriptive when it is in common usage. For example, we have found the instruction "Seal it with a Kiss!!" to be descriptive where lipstick testers were to kiss a postcard wearing the lipstick and then send it to a loved one. *Cosmetically Sealed Indus.*, 125 F.3d at 30. In so holding, we noted, "The phrase 'sealed with a kiss' is a fixture of the language, used by generations of school girls, who have given it such currency that it is readily recognized when communicated only as an acronym—SWAK." *Id*. Similarly, the Seventh Circuit held that the phrase "The Joy of Six" was descriptive after noting that the phrase "is a play on the 1970s book series *The Joy of Sex*" and "has been used to describe positive feelings associated with six of anything." *Packman*, 267 F.3d at 641. By contrast, we have held that the slogan "Swing Swing Swing" for golf clubs, playing on the title of the Benny Goodman song "Sing Sing Sing," was not descriptive because golfers "swing" their clubs, not "swing swing swing" them. *EMI Catalogue P'ship*, 228 F.3d at 65.

Defendants have not argued that the phrase "Own Your Power" was in popular usage. Nor indeed could they in a motion to dismiss. Doing so would surely require defendants to reference material beyond the four corners of the complaint. Of course, discovery may reveal that the phrase has some wider currency than is immediately apparent.

To be sure, there is no requirement that a usage be immediately recognizable as a popular phrase for it to be descriptive. *See Sands, Taylor & Wood Co.*, 978 F.2d at 952-53. In *Sands*, the court held that a material issue of fact existed regarding whether the tagline "Gatorade is Thirst Aid" was descriptive notwithstanding the fact that it was not a "common phrase." *Id*. at 953. It so held because "the average consumer [could] perceive[] 'Thirst Aid' as describing a characteristic of Gatorade—its ability to quench thirst." *Id*.

But here the phrase "Own Your Power" does not describe the contents of the Magazine. The words are prominently displayed in the center of the Magazine with the subtitles "How to Tap Into Your Strength"; "Focus Your Energy"; and "Let Your Best Self Shine" in smaller type below. Along the edges of the magazine are specific headlines for articles, including "THE 2010 O POWER LIST! 20 Women Who Are Rocking the World." Although both the center phrase and the article headline make use of the word "power," it does not appear that the phrase "Own Your Power" is meant to describe the contents of a particular item in the Magazine. For example, the "Power List" inside the Magazine contains a list of admirable people, accompanied by biographical information about each. But the list does not provide specific advice regarding how a reader can follow in the footsteps of any of these individuals, nor does it provide advice regarding how a reader can become more powerful in general.

The Table of Contents of the Magazine further underscores the fact that the phrase is not used as a headline for a particular article or content. The bottom left corner of the page contains a smaller picture of the cover and a list describing where the articles referenced on the cover can be found. It does not list any article corresponding to the phrase "Own Your Power."

It is the defendants' burden here to show that their use of the phrase "Own Your Power" was descriptive. At this stage in the litigation, defendants have not made that showing.

*C. Good Faith*

The final element of a fair use defense is a showing that the use was made in good faith. We "equate a lack of good faith with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *EMI Catalogue P'ship*, 228 F.3d at 66. Even where there is no direct evidence of intent, "if there is additional evidence that supports the inference that the defendant sought to confuse consumers as to the source of the

24

product, . . . the inference of bad faith may fairly be drawn." *Id*. (internal quotation marks omitted).

Defendants, who bear the burden in establishing a fair use defense, assert that their good faith is evident from the face of the complaint. They argue, in essence, that it is implausible that someone as well-known as Oprah would attempt to trade on the goodwill of someone relatively obscure like Kelly-Brown. *See Star Indus.*, 412 F.3d at 389 (finding good faith based in part on "the implausibility of the notion that a premier international rum manufacturer would seek to conflate its products with those of a regional discount vodka manufacturer"). The defendants further observe that the phrase "Own Your Power" was comingled with other Oprah-related marks, suggesting both that no consumer would be confused as to the origin of their "Own Your Power" publications and that they were not trading on Kelly-Brown's good will.

The defendants are correct that we have found good faith where a defendant prominently displayed its own marks in a way that overshadows the plaintiff's mark, reasoning that the prominent placement demonstrates that the defendant had no intent to trade on the plaintiff's good will. *Cosmetically Sealed Indus.*, 125 F.3d at 30-31. But a plaintiff may also show absence of good faith where a junior user had knowledge or constructive knowledge of the senior user's mark and chose to adopt a similar mark. *Star Indus.*, 412 F.3d at 389.

Kelly-Brown argues that she has pleaded facts sufficient to plausibly suggest that the defendants had knowledge of her mark and chose to go forward with the "Own Your Power" campaign anyway. Indeed, she alleges that prior to the rollout of Oprah's new Oprah Winfrey Network, to be known as "OWN," the defendants bought the rights to use the acronym "OWN" from a woman who had previously registered it as an acronym for the "Onyx Woman Network." Kelly-Brown argues that this transaction plausibly suggests that the defendants conducted a

25

trademark registration search for the word "Own," and that such a search would have turned up her then-pending service mark in the phrase "Own Your Power." We agree that these allegations do plausibly suggest that the defendants had knowledge of Kelly-Brown's mark, liked it, and decided to use it as their own. In other words, defendants' allegations that they did not intend to trade on Kelly-Brown's good will, even if true, do not preclude a finding of bad faith. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 483 (2d Cir. 1996) (declining to decide good faith as a matter of law where defendant used a mark, which happened to be the name of defendant's parent company, knowing it was identical to plaintiff's registered mark); *see also Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1101 (2d Cir. 1969) (explaining that defendant has the burden of persuasion in such circumstances).

At bottom, the defendants ask us to weigh their averments that they did not use the phrase "Own Your Power" in order to trade on Kelly-Brown's good will against Kelly-Brown's allegations that they were aware of her registered mark before launching the "Own Your Power" campaign. Our role in considering a motion to dismiss is not to resolve these sorts of factual disputes. Accordingly, the District Court erred in holding that the defendants have conclusively demonstrated good faith in their use of the phrase "Own Your Power."

*D. First Amendment Defense*

Defendants argue that the judgment of the District Court should be affirmed on the ground that the First Amendment bars Kelly-Brown's claims. We decline to consider this argument in the first instance.

\*　　　\*　　　\*

The District Court dismissed Kelly-Brown's claims of trademark infringement, false designation of origin, and reverse confusion because it found that Kelly-Brown had failed to

satisfy the threshold trademark use requirement and because it found that the defendants' use was fair use. We hold that Lanham Act plaintiffs need not satisfy the first element of a fair use defense as a threshold requirement for bringing claims pursuant to the Lanham Act. We also hold that the defendants here have not adequately demonstrated that they are entitled to dismissal of plaintiff's claims under the fair use defense. Accordingly, the judgment of the District Court with respect to these claims is vacated.

In addition, the District Court, having dismissed Kelly-Brown's federal claims, declined to exercise supplemental jurisdiction over her remaining state law claims. Because we vacate the District Court's judgment with respect to three of Kelly-Brown's federal claims, we also reinstate her state law claims.

**III.     Other Federal Claims**

*A. Secondary Trademark Infringement*

Kelly-Brown brings two claims of secondary trademark infringement against the sponsors of the Own Your Power Event:  vicarious trademark infringement and contributory trademark infringement. The District Court dismissed these claims on the separate ground that Kelly-Brown failed to allege that the sponsors were involved in a partnership with the primary infringers or that the sponsors treated the primary infringers as agents. Kelly-Brown challenges this holding.

"Vicarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (internal quotation marks omitted). Kelly-Brown does not challenge the District Court's conclusion that she has not

27

properly alleged a partnership or agency relationship. The District Court's holding with regard to vicarious trademark infringement is therefore affirmed.

"To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Id*. (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)). With respect to the first prong, Kelly-Brown alleges only that the corporate sponsors provided sponsorship for the Own Your Power Event. This allegation is not sufficient to plausibly suggest that the sponsors "intentionally induced" the remaining defendants to infringe. The complaint also does not allege that Wells Fargo, Clinique (and its corporate parent Estée Lauder), and Chico's, the remaining defendants, supplied a product to an infringer with the knowledge that the infringer was mislabeling that product. Thus, Kelly-Brown has not adequately alleged the second prong of the applicable test, either. The District Court's holding with respect to contributory trademark infringement is therefore affirmed.

*B. Counterfeiting*

A counterfeit is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The District Court found that the defendants had not produced a counterfeit mark after comparing Kelly-Brown's service mark with the logo displayed at the Event, and the headline on the cover of the Magazine. It found that the font of the words "Own Your Power" in the Oprah publications was different from the stylized powder-blue letters that Kelly-Brown registered as a part of her service mark. Kelly-Brown argues that the District Court's analysis was flawed because her mark was a service mark,

and so the ordinary consumer of her services would have less contact with the physical logo than with the auditory representation of that mark.

This argument is of no effect with respect to the Website and the October Issue of the Magazine. While it may be that these publications were in competition with Kelly-Brown's own services and publications, consumers interact with a magazine and website visually, and would recognize the differences between Kelly-Brown's mark and the defendants' representations of the words "Own Your Power" from a cursory visual inspection. As the District Court noted, the font, color, and capitalization of Kelly-Brown's mark differed from the offending uses made by defendants.

Kelly-Brown's argument carries more weight in the context of the "Own Your Power" Event. An audience member in such an event might encounter the phrase "Own Your Power" aurally and so might experience the phrase similarly in either Kelly-Brown's or Oprah's event. Nonetheless, Kelly-Brown alleges that Oprah's "Own Your Power" logo figured prominently in displays featured at the event, including the backdrops against which celebrities had their photographs taken. This logo is markedly different from Kelly-Brown's own mark, as already discussed. Further, the majority of audience members were not present at Oprah's invitation-only event. Most encountered the Event only later through video clips on Oprah's website, which, as we have discussed above, contained obvious visual differences from Kelly-Brown's mark. In this context, the differences between Oprah's logo and Kelly-Brown's logo would be clear.

Kelly-Brown thus does not state a plausible claim for trademark counterfeiting, and the District Court's dismissal of these claims is affirmed.

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court is **VACATED** with respect to Kelly-Brown's trademark infringement, false designation of origin, and reverse confusion claims. Kelly-Brown's state law claims are also accordingly reinstated. We **AFFIRM** the judgment of the District Court with respect to Kelly-Brown's vicarious infringement, contributory infringement, and counterfeiting claims. This case is **REMANDED** for further proceedings not inconsistent with this opinion.

12-1207-cv
Kelly-Brown et ano. v. Winfrey et al.

SACK, Circuit Judge, concurring in the result.

I concur in the result reached by the majority. I write separately, however, in the (I hope groundless) fear that the Court's opinion may be misconstrued to suggest a general limitation upon the ability of a publisher in any medium to use a trademarked term, in good faith, to indicate the contents of its own communication -- whether by magazine cover, newspaper headline, "blog" heading, or otherwise. Allowing a person or entity's property right arbitrarily to trump the ability of the initiator of a communication effectively to transmit news, information, thoughts, and the like, using vernacular words and phrases that are recognizable because they are also used as trademarks, would be, in my view, legally unwarranted and 99 and 44/100 percent[1] foolish.

---

[1] "[Ivory Soap's] . . . well-known slogan, '99 44/100% Pure,' was based on the results of an analysis by an independent laboratory the founder's son, Harley Procter, hired to demonstrate that Ivory was purer than the castile soap then available." Ivory Soap, http://en.wikipedia.org/wiki/Ivory_(soap) (last visited May 28, 2013); Christopher Gray, Streetscapes: 11 East 52d Street; Midtown East Town-House Erosion, N.Y. TIMES, Feb. 21, 1993 (emphasis added) ("Harley Proctor . . . sent the soap out for scientific analysis and coined the term '99 and 44/100 percent pure.'"). The Wikipedia entry includes reference to several uses of the slogan by third parties for parody, entertainment, communications, and similar purposes under the heading "**In mass media.**"

## I. General Principles

The Lanham Act, under which the plaintiffs' primary cause of action was brought, was never intended "to deprive commercial speakers of the ordinary utility of descriptive words." KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 122 (2004). Thus, the trademark "fair use" defense is animated at least in part by the principle that "[w]hen the plaintiff chooses a mark with descriptive qualities, . . . '[s]he cannot altogether exclude some kinds of competing uses,' particularly those which use words in their primary descriptive and non-trademark sense." U.S. Shoe Corp. v. Brown Group, Inc., 740 F. Supp. 196, 198 (S.D.N.Y.) (Leval, J.) (quoting Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 12 (2d Cir. 1976)), aff'd w/o op., 923 F.2d 844 (2d Cir. 1990). "The defendant has as good a right to a descriptive title as has the plaintiff." Warner Publ'n, Inc. v. Popular Publ'ns, Inc., 87 F.2d 913, 915 (2d Cir. 1937).

The stock in trade of those engaged in publishing, in the broadest sense of that term, includes turns of phrase and imagery; words are their raw materials. It would cripple publishers' effectiveness if trademark holders could obtain exclusive rights to parts of the language for use as language. A perusal of the day's headlines and magazine covers is, I think, likely to turn up the use of bona fide trademarks, bearing real

2

secondary meaning to consumers, as a means of communication, but without trenching on the rights of the mark's owner.

Like the copyright laws, the Lanham Act is "designed to balance the needs of merchants for identification as the provider of the goods with the needs of society for free communication and discussion."  Pierre N. Leval, <u>Trademark: Champion of Free Speech</u>, 27 COLUM. J.L. & ARTS 187, 210 (2004).  This principle is important when considering the defendants' uses of the phrase "Own Your Power!" in this case.[2]

## II.  The Meaning of "Own"

Kelly-Brown claims to own the mark "Own Your Power," as used in connection with the motivational services she offers.  Just as the majority begins its analysis by determining in what sense the phrase "as a mark" is and has been used, <u>ante</u> at 12-16, I think it useful to address at the outset the different senses in which the word "own" is used in this litigation.

When we talk about "owning" a trademark, we obviously use the traditional legal meaning of the word in the sense of "rightfully hav[ing] or possess[ing] as property."  BLACK'S LAW DICTIONARY 1214 (9th ed. 2009).  Taken literally and using the

---

[2]  Parenthetically, and apparently by peculiar coincidence, one of the defendants in this case is Winfrey's production company, "Harpo Productions," "Harpo" being "Oprah" spelled backwards.  Another, unrelated defendant is Chico's FAS, Inc., the owner of several brands of clothing.  Thus the oddity:  Two of defendants have the same name as two of the three Marx Brothers.

3

term "own" in this traditional[3] sense, however, the invocation to "Own Your Power" borders on the absurd.  If the "Power" is mine, do I not by definition already "Own" it?  What am I being told to do?  Or what are the parties telling me that they can do -- doubtless at some price -- to help me?

Judging by the context in which it has been used by both the plaintiff and the defendants, it is clear that the meaning of the word "own" here is closer to "embrace and employ"[4] than it is to possess or have legal ownership.  This is hardly a novel way to use the term.

By way of an easily accessible example, in the final scene of the popular motion picture THE BIRDCAGE (United Artists 1996), a character played by Robin Williams is escorting an uptight, politically and socially conservative character played by Gene Hackman through a "drag club."  Their purpose is to allow Hackman's character to escape media recognition "by dressing [him and his family] in drag and having them leave the club as the

---

[3]  "Who steals my purse steals trash; 'tis something, nothing; 'Twas mine, 'tis his, and has been slave to thousands . . . ."  WILLIAM SHAKESPEARE, OTHELLO, act 3, sc. 3.

[4]  Another way to understand the phrase as used by both the plaintiff and the defendants is in less concrete terms: "to possess psychologically," or "to integrate the power you have into your sense of yourself."  In any event, and under any such approach, the term is used similarly by the parties and is sharply distinguishable from "own" in its traditional sense.

4

night's show ends."  The Birdcage, http://en.wikipedia.org/ wiki/The_Birdcage (last visited May 28, 2013).

But Hackman's character, uptight as he is, finds it all-but-impossible to give a convincing portrayal of a man acting and dressed as a woman.  Williams's character turns to him and shouts encouragingly, "Work it.  Sell it.  Own it."[5]  I think it is almost certainly in this BIRDCAGE sense -- to embrace and employ -- or one very like it that the parties here used the word "own" in their businesses and publications, if not in discussing who "owns" the trademark at issue.

Using "own" in that sense, the phrase "Own Your Power" has more currency than the plaintiffs let on in their complaint -- although the extent to which this precise use antedates either the defendants' use or the filing of the complaint is unclear. Writers have employed the word "own" in similarly figurative, if not necessarily identical, senses for many years.[6]  And by now the phrase "Own Your Power" itself, using "own" in this way, has apparently gained an established meaning in the language.[7]

---

[5]  See http://www.youtube.com/watch?v=dYLk34GCXbo (final scene of THE BIRDCAGE) (last visited May 28, 2013) (emphasis added).

[6]  "It was a disguise; it was the refuge of a man afraid to own his own feelings, who could not say, This is what I like -- this is what I am . . . ."  VIRGINIA WOOLF, TO THE LIGHTHOUSE 56 (CRW Publishing Ltd. 2004) (1927).

[7]  See [1] JEWISH WOMAN MAGAZINE, http://www.jwi.org/ page.aspx?pid=3406 (last visited May 28, 2013) ("**Own Your Power**

III.  Fair Use as to Use of "Own Your Power!" on the Magazine

Understanding the meaning of "Own Your Power" thus, I think that the defendants' use of it on the cover of the Magazine, without more, is plainly and legally "fair" and therefore lawful.  I have little doubt, more generally, that the use of a trademarked phrase on the cover of a magazine to refer in a general way to its contents is, standing by itself and in most cases, entirely legitimate -- a straightforward and significant case of fair use.  I differ from the majority insofar as its analysis implies otherwise.

But I understand the majority and I are both reading the plaintiffs' complaint not to attack this single use standing

---

With New Ways of Activism:  As women, we have made giant strides, but **now's the time to own your power**." (emphasis added)); [2] **Own Your Power!** Online Course:  The Art & Science of Shifting Consciousness[;] 8-Lesson Series with Dr. Darren Weissman and Dr. Bruce Lipton, http://www.hayhouse.com/event_details.php?event_id=1692 (emphasis added)(last visited May 28, 2013); [3] Shann Vander Leek, True Balance lifecoaching[;] **Own Your Personal Power**, http://www.truebalancelifecoaching.com/articles/own_your_personal_power.php (last visited May 28, 2013; emphasis added); [4] Leadership Strategies for Women,® LLC, **Own Your Power**: 8 Leadership Strategies for Women, http://leadershipstrategiesforwomen.com/2012/07/own-your-power-8-leadership-strategies-for-women-2 (last visited May 28, 2013; emphasis added); [5] AMY APPELBAUM, **OWN YOUR POWER**: CREATE CONFIDENCE (2012) (hypnotherapy audio book; emphasis added); [6] Tetka Rhu, **OWN YOUR POWER**: GODDESS BOOK OF PRAYERS (2010) (emphasis added); [7]  JANINA RENEE, TAROT, YOUR EVERYDAY GUIDE: PRACTICAL PROBLEM SOLVING AND EVERYDAY ADVICE 28 (2003) ("Because the Empress is a card of sovereignty, you are encouraged to **own your own power** . . . ."); [8] **Own Your Power** in the Bedroom Workshop for Women, http://marriageintimacyexpert.com/workshops/own-your-power-in-the-bedroom/ (last visited May 28, 2013) (emphasis added).

alone.  See ante at 18 ("Kelly-Brown argues that, taken together, these uses suggest that the defendants were attempting to build an association with consumers between the phrase 'Own Your Power' and Oprah." (emphasis added)).  It is the defendants' use seen as part of a campaign of recurring uses, across different media, designed to appropriate the defendants' source-identifier, or without regard for a high likelihood of that occurring, that defeats their fair use defense.  This is not to say that even the use of "Own Your Power" for the Magazine, website, and seminar event (the "Event") together may not also constitute fair use.  Only that any such conclusion is foreclosed at this stage of the proceedings.

As the majority explains, ante at 16, the use of the phrase "Own Your Power" on the Magazine is a fair use, and therefore not actionable under the Lanham Act, if and only if the phrase was used "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  JA Apparel Corp. v. Abboud, 568 F.3d 390, 400 (2d Cir. 2009) (internal quotation marks omitted).  Because the application of the third element seems to me to be dispositive, I address them in reverse order, i.e., use (1) in good faith, (2) in a descriptive sense, and (3) other than as a mark.

1. Good Faith.  Were the issue limited to the use of "Own Your Power!" on the Magazine's cover, I would conclude that

7

there are no facts plausibly pled that support the conclusion that the defendants "inten[ded] to trade on the good will of the [plaintiffs] by creating confusion as to source or sponsorship." EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 66 (2d Cir. 2000). But the plaintiffs allege that the Magazine's use of the phrase "Own Your Power" "was only the beginning of a pattern of deliberate and systematic unauthorized use by Defendants and a malicious intent to identify the [Defendants] as the source for the [Plaintiffs'] Services." Compl. ¶ 41. Further:

> [u]pon information and belief, Defendants knowingly concealed, suppressed, and/or omitted the material fact that they are not the owners of the [Own Your Power] Trademark and the source for motivational communications services in the areas of self-awareness, self-realization, and entrepreneurship under the [Plaintiffs'] Trademark with intent that the public rely on the concealment, suppression, and/or omission in connection, distribution and advertisement of their Counterfeit Campaign.

Compl. ¶ 43. And later:

> Upon information and belief, the [Defendants'] multi-tiered campaign, utilizing the extensive reach of television, the internet, and print media, has already reached millions of consumers. Defendants' media presence has been documented to persuade, influence and command the opinion of its audience. The OYP Partnership's sheer saturation of the market by Defendants' concerted efforts, Counterfeiting and other campaigns have destroyed Plaintiffs' ability to use the Trademark without

8

reversing the confusion and damage that has already been done.

Compl. ¶ 99.

The plaintiffs have thus alleged facts that raise the plausible inference that the defendants used the phrase on the Magazine cover as part of a careful plan that included the Event and the website, and sought collectively to appropriate the "Own Your Power" mark from the plaintiffs with knowledge that the plaintiffs owned it and with total disregard for the plaintiffs' rights. I therefore join the majority's conclusion that a finding of "good faith" with respect to use of the phrase on the Magazine cover is inappropriate at this stage of the proceedings.

It remains, of course, for the plaintiffs to prove their allegations. The evidence may show that the defendants, even knowing of the plaintiffs' trademark, reasonably believed that the use of the words "Own Your Power" on the Magazine or elsewhere would confuse no one as to source; that the use would in any event be a fair one; or that it was not in fact a calculated part of a more elaborate effort to appropriate the plaintiffs' property. Cf. Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 397 (2d Cir. 1995) ("Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith."); Campbell v. Acuff Rose Music Inc., 510 U.S. 569, 585 n. 18 (1994) ("Even if good faith were central to [copyright] fair use, 2 Live

9

Crew's actions do not necessarily suggest that they believed their version was not fair use . . . . If the use is otherwise fair, then no permission need be sought or granted.").

2. *In a descriptive sense.* I would conclude, if we were called upon to do so on the pleadings alone, that the phrase "Own Your Power" was used in a "descriptive sense" in connection with the Magazine's content as a matter of law. I do not think any contrary reading of the pleadings is plausible.

In <u>Cosmetically Sealed Indust., Inc. v. Chesebrough-Pond's USA Co.</u>, 125 F.3d 28 (2d Cir. 1997), the plaintiff owned the registered trademark SEALED WITH A KISS for its product, a women's lip gloss. <u>Id.</u> at 29. The defendant used the same phrase, "Seal it With a Kiss," in connection with an advertising display for its Cutex brand lipstick, inviting each prospective customer to leave a print of her lips, with the Cutex lipstick applied, on a postcard; then to "'[t]ake [it] and send it to the one you love!!'" <u>Id.</u> We concluded that this use was descriptive even though it in no way described the color, consistency, or long wear of the defendant's lip gloss. We decided that the defendant used the phrase in a descriptive sense because "Seal it With a Kiss" describes "an action that the sellers hope consumers will take, using their product." <u>Id.</u> at 30.

Similarly, in <u>B & L Sales Associates v. H. Daroff & Sons, Inc.</u>, 421 F.2d 352 (2d Cir. 1970), we concluded that the

10

phrase "Come on Strong," which was used by the plaintiff as a registered trademark for a wide variety of products, was used in a descriptive sense by the defendant in advertisements for its men's clothing line.  We reasoned that the phrase communicates to the prospective customer that defendant's clothing "would assist the purchaser in projecting a commanding, confident, 'strong' image to his friends and admirers."[8]  Id. at 353.  We relied upon this understanding to conclude both that the use was not likely to cause confusion and that it was a descriptive fair use.  Id. at 354.

The defendants' use of "Own Your Power" on the Magazine cover fits easily among the uses found to be descriptive in these

---

[8]  We have defined "descriptive sense" in arguably more capacious terms than our sister circuits.  A hint as to the breadth of our rule lies in our discussion in Cosmetically Sealed.  There, we read a prior case, Car-Freshener Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2d Cir. 1995), as having concluded that the pine-tree shape of a car freshener -- a "description (by the suggestive use of the image) of the period in which the product was sold" -- was "a description of the goods within the meaning of the fair use defense."  125 F.3d at 30 (emphasis added)(internal quotation marks omitted).

Other circuits, by contrast, appear to have adopted the view of the leading trademark treatise that "to be eligible for a fair use, defendant must be using the challenged designation in a descriptive, not merely suggestive, sense."  MCCARTHY ON TRADEMARKS § 11.45 (citing Breuer Elec. Mfg. Co. v. Hoover Co., No. 97 C 7443, 1998 WL 427595 (N.D. Ill. July 23, 1998)).  Thus the effort in Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 952 (7th Cir. 1992), a Seventh Circuit case cited by the majority, to determine whether the phrase "Gatorade is Thirst Aid" was descriptive or merely suggestive.  See also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1042 (9th Cir. 2010) (citing MCCARTHY ON TRADEMARKS § 11.45).

11

cases. The feature story in the October issue is the 2010 O Power List, The 2010 O Power List, O THE OPRAH MAGAZINE, October 2010, at 198, which honors public figures and other notables who embody certain characteristics of power. Also inside the Magazine are several shorter articles related to this theme. See Dr. Phil, Personal Power: 6 Rules for How to Harness Yours, id. at 74 (providing "strategies for tapping your inner power reserves"); How to Light Up a Room, id. at 214-16 (theorizing that charisma is the "X factor" possessed by all of the people featured on the 2010 O Power List). The descriptive connection is obvious -- indeed, it is difficult to see how any potential reader with whom the defendants are trying to communicate, upon picking up the Magazine and reading the coverline, would not expect to find just these sort of articles inside. I thus find implausible any assertion that the phrase "Own Your Power" is not used in a descriptive sense here.

The majority -- although not called upon to do so in light of our shared view that it is plausible that the Magazine cover, as part of the defendants' alleged overall plan, was in any event not a fair use -- finds that the phrase as used specifically on the Magazine cover is not used in a descriptive sense. The majority apparently does not consider the feature article, or the "Personal Power" and "Light Up a Room" articles, to contain "specific advice regarding how a reader can follow in

12

the footsteps" of the subjects featured on the O Power List, or "advice regarding how a reader can become more powerful in general," ante at 24.

Even if this were a fair characterization of the Magazine's contents -- and I doubt that it is -- our law has never required a connection as close and absolute as the majority demands. Fortunately, the majority leaves open the possibility that the defendants may adduce evidence of the requisite descriptive connection, perhaps by either (a) providing a fuller understanding of the sense in which the phrase "Own Your Power" was used and was likely to be understood by the relevant consumer group, and therefore illuminating the nexus between that phrase and the Magazine's contents; or (b) demonstrating that the phrase or phrases like it are commonly used. I think neither is necessary.

3. Use other than as a mark. Finally, if we were considering individually the size, location, and context of the defendants' use of "Own Your Power!" on the cover of the Magazine, as our law seems to prescribe, see JA Apparel Corp., 568 F.3d at 400-401, it would be clear to me that the defendants did not use the phrase as a mark.

The two most prominent items on the cover of the October issue are the "O The Oprah Magazine" mark in the upper left-hand corner and the full page photograph of Oprah herself.

13

That "the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks" is a strong indication that the defendants' use is other than as a mark. Cosmetically Sealed, 125 F.3d at 30. The size and location of the phrase, moreover, considered in light of the context of the use on a magazine cover further suggest that the defendants did not use the phrase "as a symbol to attract public attention." JA Apparel, 568 F.3d at 400 (emphasis added) (internal quotation marks omitted). A reasonable consumer would therefore expect the phrase to explain something about the nature of the contents of this particular issue, not to denote the source of those contents.

But the majority opinion does not consider this use individually. It concludes instead that the "several unique instances" -- that is, the use on the Magazine, at the Event, and on the website -- "collectively constitute use as a mark," ante at 17, apparently because "it is plausible that the defendants were attempting to build up a line of wide-ranging content all denoted by the phrase 'Own Your Power,'" id.

Perhaps this somewhat novel theory is useful at this stage in determining the plausibility of the plaintiffs' factual allegations.[9] But I do not think, and I do not read the majority

_____

[9] I do think it worth noting that this "collective use" theory is in some tension with JA Apparel's call for individualized consideration of each particular use. See JA

14

opinion to mean, that the mere coincidence of several uses forecloses the possibility that individual uses are "other than as a mark."  They do, I think, assert that if use of "Own Your Power" on the Magazine's cover was part of an overall plan to appropriate the plaintiffs' mark, then to that extent the use on the Magazine may be actionable.  In order to prevail at summary judgment or trial, then, the plaintiffs must adduce proof in support of that allegation in order to be able to prevail on the claim relating to the Magazine.  They must prove, for example, that the Magazine use was indeed part of defendants' plan to develop a line of goods or services under an "Own Your Power" sub-brand, or that relevant consumers would be likely, perhaps as a result of repetition, to perceive the phrase on the Magazine "as a symbol to attract public attention," JA Apparel, 568 F.3d at 400 (emphasis added), and not just as a coverline describing the theme of the issue.  Whether the plaintiffs can do this, of course, remains to be seen.

---

Apparel, 568 F.3d at 402.  I note also that the principal authorities the majority cites in support of it are drawn from an entirely different context -- the protectability of a mark as a function of its value as an identifier of source.  Ante at 19-20.  So although it may be true that the concept is helpful at this stage, when our only task is to identify factual plausibility, I would caution against reading the majority opinion to mean that in all cases and at all stages of litigation unique uses are to be considered "collectively."

15

## IV.  The Website and the Event

With respect to the defendants' use of "Own Your Power" on the website and for the Event, I agree with the majority that the plaintiffs have pleaded sufficient plausible facts to fend off the fair use defense on a motion to dismiss.

* * *

If we were considering the October 2010 issue of the Magazine alone, I would conclude that the defendants' use of the trademarked phrase was a "fair" one.  I simply do not think we could conclude at this stage, were we asked to do so, that the allegations in the plaintiffs' complaint relating to the Magazine coverline considered alone can be read plausibly to describe a use that is not fair as a matter of law.  A holding to the contrary might endanger the ability of publishers of all stripes accurately and artfully to describe their publications.

But I, like the majority, understand the complaint not to attack the defendants' use of "Own Your Power!" on the Magazine's cover alone, but as part of an overall campaign by the defendants in several media to wrest from the plaintiffs their rights in the mark.  It remains possible that a full record will reveal that despite the multiple uses, any or all of them are fair uses, and therefore not actionable under the Lanham Act.  I thus conclude, with the majority, that this case must be returned in its entirety to the district court for further proceedings.

16