*Solid 21, Inc. v. Breitling USA, Inc., et al.*

In the

# United States Court of Appeals

## For the Second Circuit

---

August Term 2022

(Argued: May 23, 2023 | Decided: March 14, 2024)

Docket No. 22-366

SOLID 21, INC.,

*Plaintiff-Counter-Defendant-Appellant,*

v.

BREITLING U.S.A., INC., BREITLING SA,

*Defendants-Counter-Claimants-Appellees,*

BREITLING AG, INC.,

*Defendant-Appellee,*

CVC CAPITAL PARTNERS SICAV-FIS, S.A.,

*Defendant.*[*]

---

[*] The Clerk of the Court is directed to amend the official caption as set forth above.

Before:

WESLEY, SULLIVAN,[†] PARK, *Circuit Judges*.

Plaintiff-Appellant Solid 21, Inc. appeals from a final judgment entered in favor of Defendants-Appellees Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively, "Breitling"). The United States District Court for the District of Connecticut (Shea, *J.*) granted summary judgment for Breitling, finding that Breitling used the term "red gold"—which Solid 21 owns as a trademark—permissibly under the Lanham Act's fair use defense.

Solid 21 appeals from the district court's judgment, arguing that material issues of fact precluded summary judgment for Breitling. We disagree. Accordingly, we **AFFIRM** the judgment of the district court.

Judge Park dissents in a separate opinion.

————————————

AMY MASON SAHARIA, Williams & Connolly LLP, Washington, DC (Lisa S. Blatt, Williams & Connolly LLP, Washington, DC; David L. Hecht, Yi Wen Wu, Hecht Partners LLP, New York, NY, *on the brief*), *for Plaintiff-Counter-Defendant-Appellant* Solid 21, Inc.

HAZEL MAE B. PANGAN, Gordon Rees Scully Mansukhani, LLP, Los Angeles, CA (Craig J. Mariam, Gordon Rees Scully Mansukhani, LLP, Los Angeles, CA, *on the brief*), *for Defendants-Counter-Claimants-Appellees* Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG).

————————————

[†] Judge Rosemary S. Pooler, originally a member of the panel that heard oral argument in this case, passed away on August 10, 2023. Judge Richard J. Sullivan was selected at random to complete the panel. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b).

WESLEY, *Circuit Judge*:

This is a trademark case about wristwatches and "red gold." Defendant-Appellee Breitling,[1] a luxury watch manufacturer, uses the term "red gold" in its advertisements, product listings, and catalogues. Plaintiff-Appellant Solid 21, a luxury jewelry and watch business, has owned a trademark in RED GOLD® since 2003, using it since 1989. The question in this case is whether Breitling's use of the term "red gold" constitutes fair use—good faith use of a trademark to describe a Breitling product. We hold that Breitling established its fair use defense as a matter of law.

## BACKGROUND

Gold wristwatches come in different colors, usually occurring when manufacturers combine pure gold with other metals like copper and silver, changing their overall appearance. Left untouched, pure gold is yellow. With the addition of silver, gold takes on a whiter tone; copper creates a reddish or pinkish color.

---

[1] Appellees in this action are Breitling U.S.A., Inc. and Breitling SA (a/k/a Breitling AG) (collectively, "Breitling"). Breitling SA, a Switzerland-based manufacturer, sells watches under the BREITLING brand. Breitling U.S.A., Inc., a Connecticut corporation, is the exclusive United States distributor of parent company Breitling SA.

Beginning as early as the mid-nineteenth century, trade dictionaries, jewelry makers, and newspapers referred to these combinations with terms like "yellow gold," "white gold," "red gold," "blue gold," and "pink gold." Throughout the twentieth century, many newspapers, advertisements, magazines, textbooks, and other reference materials used the term "red gold" to describe the gold-copper combination. Though the term "rose gold" is commonly used today, references to "red gold" continue; from 2001 to 2017, the *Wristwatch Annual* included more than 1,300 references to "red gold" by fifty-three different watchmakers.[2]

Appellant Solid 21 is a luxury watch and jewelry business founded by Chris Aire, a high-profile jeweler; his roster of celebrity clients call him "Iceman" and the "King of Bling." Joint Appendix ("JA") at 2676, 2697–99. In 2002, Aire filed a trademark application for "RED GOLD®" with the United States Patent and Trademark Office ("USPTO") for "[f]ine jewelry made of a special alloying of gold with a distinct color made into fine jewelry." *Id*. at 2573. It was registered as a

---

[2] Solid 21 contends that the historical evidence Breitling submitted into the record is "mostly archaic." Solid 21 also points out that Breitling did not submit as evidence the underlying 1,300 *Wristwatch Annual* articles/product listings—only an aggregated chart prepared by Breitling's expert. Solid 21 does not dispute the authenticity of Breitling's evidence, nor does it question the accuracy of its chart.

trademark in 2003.[3] Today, RED GOLD® is a collection of jewelry under the Solid 21 name—a "brand" which includes some products made of what Solid 21 describes as "amber hue gold," and is meant to "appeal in particular to male clients." Appellant's Br. at 9–10.[4] Solid 21 proclaims that its RED GOLD® mark is "pure genius." *Id*. at 1.

Aire's use of the term "red gold" dates back to the 1980s when Aire first "saw a need in the market," and "started playing with colors of gold." JA at 2685. After "dabbl[ing] in black, purple [and] green" gold, Aire claims he "found red gold" and immediately liked it because of what he described as its "very deep, rich color." *Id*. Before then, Aire had never seen the term "red gold" used in connection with the color of a metal before.

In the early 2000s, Aire continued to develop RED GOLD® as a "broader branding concept for watches and jewelry," including some jewelry not even made from gold. *Id*. at 3558. In his view, rose and pink sounded too "feminine," and men wanted a more "masculine" product—a market demand he believes the

---

[3] According to the trademark registration for RED GOLD®, Aire began using the mark in commerce in 1989. We accept this as true at the summary judgment stage.

[4] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

RED GOLD® mark satisfied. *Id*. In 2009, RED GOLD® achieved incontestable status under 15 U.S.C. § 1065.[5]

Despite Solid 21's ownership of the RED GOLD® trademark, numerous other watch companies have used the term "red gold" in listing and advertising products made from the gold-copper combination. Over the years, Solid 21 has sued these companies, including Rolex, Movado, Swatch, and Louis Vuitton, for trademark infringement. Solid 21 also sued the Appellee here, Breitling.

Breitling, which distributes in the United States through a subsidiary, is a Switzerland-based watch company, making and selling luxury watches under the Breitling brand. Like Solid 21 (and other watch manufacturers), Breitling makes and sells some gold watches that have red/pink hues. Breitling uses the term "red gold" in listing and advertising these particular watches. Below is an example from one of Breitling's print advertisements (with a red box to highlight Breitling's use of the term "red gold," along with an enlarged excerpt):

---

[5] Incontestability precludes a trademark defendant from raising as a defense that the plaintiff's mark is merely descriptive. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985). Under section 15 of the Lanham Act, a mark achieves incontestable status if (1) "the mark ha[s] been registered and in continuous use for five consecutive years," (2) "there ha[s] been no final adverse decision to [the] petitioner's claim of ownership or right to registration," and (3) "no proceedings involving such rights [a]re pending." *Id.* at 191–92 (citing 15 U.S.C. § 1065).



JA at 2342.  Breitling also uses the term "red gold" in its website product listings:



*id.* at 3624;



8

*id.* at 2606; and social media posts:



*id.* at 3626.

In Breitling's print advertisement above, the words "[a]vailable in stainless steel or 18k red gold" appear in lowercase and in small font at the bottom right of the advertisement, directly under an enlarged picture of the reddish and pinkish watch. *Id.* at 2342. In one of the product listings on Breitling's website, the words "18k Red Gold – Silver" appear in smaller font directly under the model name of the watch, "NAVITIMER AUTOMATIC 41." *Id.* at 3624. Other website listings display the words "Stainless Steel & 18k Red Gold" under the bolded, larger model name "NAVITIMER B01 CHRONOGRAPH 46." *Id.* at 2606. Breitling's social media posts use the term as well; "red[ ]gold" appears in hashtags after other

9

words like "breitling," "navitimer," "automatic," "diamonds," and "steel," and directly next to a picture of a watch with a reddish/pinkish hue. *Id*. at 3626.

Solid 21 and Aire accused Breitling of stealing their business by using the term "red gold" to confuse customers over the source of Breitling's products. In 2010 and 2011, Solid 21 originally filed trademark infringement suits against Breitling and several other watch companies in the Central District of California. Pursuant to a tolling agreement, Solid 21 refiled this suit against Breitling in 2019 in the District of Connecticut, asserting claims for trademark infringement under the Lanham Act, along with related claims under state law. Solid 21's complaint alleged that Breitling's use of the term "red gold" was "likely to cause confusion, reverse confusion, mistake, and/or deception as to the source" of Breitling's watches, and that consumers would mistakenly believe that Solid 21 was affiliated with Breitling's products. *Id*. at 39–40.

Breitling moved for summary judgment on the grounds that the term "red gold" was generic and the trademark registration was invalid, or alternatively, that Breitling's use of the term fell under the Lanham Act's "fair use" defense, which permits the use of a protected mark to describe one's goods so long as the

use is in good faith and not as a mark.[6]  *See* 15 U.S.C. § 1115(b)(4).  After first denying Breitling's motion for summary judgment, the district court granted Breitling's reconsideration motion and entered judgment for Breitling on the fair use defense.[7]

Though the district court found in its initial decision that Breitling did not carry its burden of showing descriptive use because Breitling could have used alternative terms like "rose gold" in lieu of "red gold,"[8] on reconsideration, the court reexamined our precedents and determined that the mere existence of alternative terms did not preclude summary judgment, and that the images of Breitling's product materials made clear that it was using the term "red gold" descriptively.[9]  The court also determined that Breitling satisfied the good faith

---

[6] Solid 21 filed its own motion for summary judgment.  Solid 21 does not appeal the district court's denial of that motion; it asks only that this Court remand for a trial.

[7] The district court also concluded that there was a genuine issue of fact as to whether Solid 21's mark was generic, and thus invalid.  Breitling does not challenge this finding on appeal.

[8] In all of its orders, the district court concluded that Breitling did not use the term "red gold" as a mark.

[9] In its reconsideration decision, the district court suggested that Breitling's "rose gold" watch as portrayed on the Breitling website was a lighter shade than the watch listed as "red gold."  Special Appendix ("SA") at 35–36.  This was, as the district court saw it, evidence that "Breitling was using 'red gold' in a descriptive sense to reflect the nuance

element of its fair use defense. The district court cited our Circuit's law that "knowledge alone is insufficient for a finding of bad faith," and found that, even if Breitling knew about Solid 21's prior use of the mark, there was "no other evidence of bad faith." SA at 38. The district court granted summary judgment for Breitling, and this appeal followed.[10] We affirm.

## DISCUSSION

Section 43(a) of the Lanham Act prohibits any person from using in commerce, in connection with any goods, "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1). "Fair use is a defense to liability under the Lanham Act even if a defendant's conduct would otherwise constitute infringement of another's trademark." *Cosmetically Sealed Indus., Inc. v.*

---

of that particular color," and that it was a "different hue from 'rose gold.'" *Id*. at 36. After Solid 21 moved for reconsideration partly on the basis that Breitling used both terms to describe the same watch, the district court clarified that its prior finding "was not essential" to its reconsideration because Breitling's use of both terms was always descriptive and was "paired with other color and material descriptors such as 'stainless steel' and 'mother-of-pearl.'" *Id*. at 42, 46.

[10] Solid 21 does not challenge the district court's conclusion that the court's fair-use determination also disposed of Solid 21's related claims, which were trademark claims or wholly derivative of them.

*Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997). This defense permits "use . . . otherwise than as a mark . . . of a term . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4). The underlying principle of fair use is that it "protects the right of society at large to use words or images in their primary descriptive sense, as against the claims of a trademark owner to exclusivity." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995). "In order to assert a successful fair use defense to a trademark infringement claim, the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

We review a grant of summary judgment *de novo* and affirm only if there are no genuine issues of material fact and the moving party establishes its right to judgment as a matter of law. *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000). Though "[s]ome caution must be observed" in granting summary judgment under fair use because the defendant's good faith is at issue, *id.*, this caution "does not alter the result where only speculative allegations are offered to demonstrate the existence of [the

13

defendant's] state of mind," *Res. Devs., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the trier of fact could reasonably find for the non-movant." *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996).

Breitling met its burden in proving fair use. Breitling used the term "red gold" descriptively, not as a mark, and in good faith. We affirm.

## I. Descriptive Use, Not as a Mark

We determine descriptive use by assessing the manner in which the defendant uses the mark with respect to its own products. *EMI Catalogue*, 228 F.3d at 65. Federal law "recognize[s] the fair use defense where the name or term is used 'to describe the [defendant's] goods.'" *Cosmetically Sealed*, 125 F.3d at 30. "Describing goods" includes more than just "words that describe a characteristic of the goods, such as size or quality." *Id.* It also covers a "tendency" to describe goods "in a broad sense, including . . . words or images that *more abstractly identify some information about the goods in question.*" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 93 (2d Cir. 2020) (emphasis added). We also look to the overall context in which the term is used, including the "physical nature of the use in terms of

14

size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks." *EMI Catalogue*, 228 F.3d at 65. Even where the plaintiff trademarks a term for use in a particular industry, that term may still have other "descriptive use within the same industry." *Tiffany*, 971 F.3d at 94.

Breitling uses the term "red gold" in a descriptive sense, which watchmakers had started doing long before Solid 21 purportedly began using the term as a mark. Consistent with the term's historical usage, Breitling uses the term "red gold" exclusively to describe product materials for watches with red/pink hues. *See id.* at 93. Breitling does not use the term to describe any product that is *not* made from gold with a red/pink hue.[11]

The physical layout of Breitling's descriptions of its product materials confirms that its use of the term "red gold" is descriptive. The term is listed as a product material in Breitling's advertisements alongside, and in the same manner as, descriptors of other metals, minerals, or alloys, such as "stainless steel," "silver," "titanium," and "diamonds." JA at 1345, 1887, 2339, 2342, 2352, 2605–08,

---

[11] Solid 21's counsel conceded this at oral argument. *See* Oral Argument at 9:55–10:30.

3624–26. Breitling's website displays "red gold" in smaller text beneath watch model names. In Breitling's print materials, "red gold" appears in the products' descriptions in small font: "housed in a sturdy and light case in titanium—a favorite *material* in the aeronautical field—or in red gold," "18k red gold case and black dial," and "[a]vailable in stainless steel or 18k red gold." *Id*. at 1345, 1887, 2342 (emphasis added). In each of these instances, "red gold" is accompanied by one of Breitling's own trademarks—indicating Breitling, not Solid 21, as the source. In context, these product and advertising materials leave no dispute that Breitling uses "red gold" to describe its watches' materials and appearance, not as an indication of source.

We conclude for the same reasons that Breitling does not use the term "red gold" as a mark. We equate "use as a mark" with the use of a term "as a symbol to attract public attention," or "to identify and distinguish . . . goods [or services] . . . and to indicate [their] source." *Tiffany*, 971 F.3d at 92 (quoting 15 U.S.C. § 1127). Breitling uses the term "red gold" in smaller print, near other descriptive terms, and near its own Breitling trademark. There is no indication that Breitling uses the term on products themselves. Even in rare instances where Breitling capitalizes "Red Gold" in its social media posts, it also capitalizes the descriptor

16

"Steel." JA at 3628. Its "#redgold" tag is likewise buried in a long list of other terms, most of which are descriptive. *Id*. at 3626–27. Though Breitling uses "red gold" in multiple instances, it does so only as often as referring to its watches with red/pink hues. *Cf. Kelly-Brown*, 717 F.3d at 308–10 (holding that, at the motion-to-dismiss stage, plaintiffs sufficiently alleged that "defendants were trying to create, through repetition across various forms of media, a[n] association between [defendants] and the [trademarked] phrase" where "use was far more . . . varied" involving "wide-ranging content").

Solid 21 argues that Breitling's use is not descriptive because Breitling could have used alternative terms to describe its watches. In Solid 21's telling, "rose gold" is a superior description because it is "a term that is commonly understood and in popular usage among consumers." Appellant's Br. at 39–40. Citing our decision in *EMI Catalogue*, Solid 21 argues that the availability of alternative and superior terms forecloses summary judgment for Breitling.

In *EMI Catalogue*, a music publisher sued a defendant golf club manufacturer for infringing its trademark in the classic Benny Goodman jazz song, "Sing, Sing, Sing (With a Swing)." 228 F.3d at 59. The defendant ran a television advertisement for a line of golf clubs featuring swing-style stock music along with

17

the words "Swing Swing Swing." *Id*. at 59–60. Noting that the defendant could have used other terms like "hit," "stroke," "shot," or even the single word "swing" instead of the alliterative "Swing Swing Swing," our Court concluded that summary judgment for the defendant was inappropriate on its fair use defense. *Id.* at 65–66.

*EMI Catalogue* won't carry what Solid 21 asks of it. Though the availability of alternative terms is relevant in a fair use analysis, *id*. at 65, the scope of the fair use defense varies with the term's level of "descriptive purity," *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1042 (9th Cir. 2010). That is, "as a defendant's use of a term becomes less and less purely descriptive, its chances of prevailing on the fair use defense become less and less likely." *Id.* In *EMI Catalogue*, the alliterative combination "Swing Swing Swing" lacked descriptive meaning. While "Swing" was descriptive, "Swing Swing Swing" was not. *See* 228 F.3d at 65. The defendant "hope[d] individual consumers w[ould] 'swing' its [golf clubs] . . . not 'swing swing swing'" them. *Id.*

"Red gold" is inherently descriptive. It describes gold watches and jewelry with a red/pink hue. Had Solid 21 instead trademarked an alliterative alternative, "Red Gold Red," and had Breitling used *that* term to describe its watches when

18

just "red gold" would have sufficed, *EMI Catalogue* might be decisive. The availability of an alternative does not necessarily neutralize the descriptive meaning "red gold" already engenders.

Our conclusion that Breitling used the term "red gold" descriptively is undisturbed by evidence that Breitling once used "rose gold" and "red gold" to describe the same watch. This is not evidence that Breitling's use of either was anything but descriptive. While it undercuts a suggestion that Breitling used the term "*red* gold" only to describe a watch darker in color (containing more copper) than one in "*rose* gold," the exact chemical composition and degree of reddish tint in Breitling's watches is not material. "The test of descriptiveness is the meaning attached to the designation by prospective purchasers rather than the scientific meaning" given by chemists and metallurgists. *Blisscraft of Hollywood v. United Plastics Co.*, 294 F.2d 694, 699 (2d Cir. 1961). Unlike the word "gold"—which describes the watch's precious metal—the word "red" describes to consumers only the watch's general color, rather than an exact mixture of copper/gold. Because "red gold" describes Breitling's watches "in a broad sense," accurately

19

"identify[ing] some information" about appearance, it is descriptive. *Tiffany*, 971 F.3d at 93.[12]

The availability of alternative terms does not preclude summary judgment here. Concluding otherwise would undermine fair use principles, which recognize the "undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). Solid 21 trademarked the name of a color—red—coupled with the name of a metal: gold. It cannot now "deprive commercial speakers," like Breitling, "of the ordinary utility of descriptive words" by requiring the use of synonyms or alternatives. *Id.* To the extent this may lead to some consumer confusion, that "is a risk [Solid 21] accepted" when it chose to trademark a descriptive term. *Id.*

---

[12] The International Standards Organization ("ISO") created criteria for determining the chemical composition of gold alloys. Breitling contends that it complies with ISO Standard 8654. This standard specifies the composition of the "5N" alloy of gold, which the ISO calls "red." This is in contrast to the ISO's specification of a lighter "pink" gold alloy. For reasons stated above, whether Breitling complies with the ISO's exact metallurgical standards is immaterial to a descriptiveness analysis, but may have some bearing on the question of whether Breitling was acting in good faith when it employed the term "red gold."

**II. Good Faith**

The final element of fair use is a showing that the defendant used the mark in good faith. *See Kelly-Brown*, 717 F.3d at 312. The good faith requirement is not litigated frequently. *EMI Catalogue*, 228 F.3d at 66. We equate it with "the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *Kelly-Brown*, 717 F.3d at 312. "Any evidence that is probative of intent to trade on the protected mark would be relevant to the good faith inquiry," *EMI Catalogue*, 228 F.3d at 66, including whether the defendant used a term "reflect[ing] the product's characteristics," *Sports Auth.*, 89 F.3d at 964, and whether the "source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks," *Cosmetically Sealed*, 125 F.3d at 30. This evidence should be viewed within the "overall context in which the marks appear." *EMI Catalogue*, 228 F.3d at 66.

At the summary judgment stage, we consider—in addition to facts showing the defendant's good faith—evidence tending to show the defendant's bad faith. *See id.* at 67. The summary judgment rule would be "rendered sterile" if "mere incantation of intent or state of mind would operate as a talisman to defeat an

otherwise valid motion." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 125 (2d Cir. 2001).

Though a showing of good faith is its own requirement under the statute, there is some overlap between fair use's three prongs; evidence that the defendant used the term descriptively and not as a mark might also demonstrate that the defendant acted in good faith. *See Car-Freshner*, 70 F.3d at 270; *Cosmetically Sealed*, 125 F.3d at 30–31. Thus, our good faith analysis often travels together with descriptiveness. When the defendant uses a term descriptively, not as a mark, we have granted summary judgment even if she had prior knowledge of the plaintiff's trademark and did not consult counsel before using it. *See Car-Freshner*, 70 F.3d at 270. Conversely, where there is a triable issue as to descriptiveness, we have found a triable issue with respect to good faith as well. *See EMI Catalogue*, F.3d at 67; *see also Kelly-Brown*, 717 F.3d at 312–13 (motion to dismiss). We think it rare that a defendant who uses a descriptive term only to describe its products, and not as a trademark, will nevertheless "intend[] to sow confusion between the two companies' products." *Tiffany*, 971 F.3d at 88. Thus, summary judgment is appropriate where the defendant's good faith is evidenced by the totality of the circumstances and the plaintiff does not put forth evidence of bad faith creating a

genuine issue for trial. *See Car-Freshner*, 70 F.3d at 270; *Cosmetically Sealed*, 125 F.3d at 30.

Breitling submitted evidence of its good faith. First, the same evidence that demonstrates Breitling's descriptive and non-trademark use also indicates that Breitling lacked an intent to confuse consumers over the source or sponsorship of Breitling's products. Second, the industry's long history of using "red gold" to describe watches and jewelry is also evidence of Breitling's good faith.

As evidence of Breitling's bad faith, Solid 21 points to the fact that Breitling (i) did not conduct a trademark search before using the term "red gold"; (ii) caused some consumer confusion; (iii) could have used an available alternative, namely, "rose gold"; (iv) had constructive or actual knowledge of Solid 21's branding; and (v) began using the term "red gold" decades after Aire first used it.

Solid 21 fails to create a genuine issue of material fact as to whether Breitling was acting in bad faith while employing the term "red gold." "[I]t is well established that 'failure to perform an official trademark search . . . does not, standing alone, prove . . . bad faith.'" *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008) (quoting *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 460 (2d Cir. 2004)), *aff'd* 329 F. App'x 333 (2d Cir. 2009). And noted instances of consumer

confusion do not create a triable issue on Breitling's intent; "some possibility of consumer confusion must be compatible with fair use." *KP Permanent Make-Up*, 543 U.S. at 121–22.

Further, the availability of alternative terms, in this case, does not create a triable issue with respect to good faith. In *EMI Catalogue*, we noted that "[t]he availability of other descriptive terms and a decision not to use one of those terms is also evidence suggesting bad faith." 228 F.3d at 67. We did not, however, say that the availability of alternatives necessarily *precludes* summary judgment. More importantly, the term "red gold"—unlike "Swing Swing Swing"—is inherently descriptive, and evidence that Breitling used one inherently descriptive term over another is not evidence that Breitling intended to trade on Solid 21's name.

Solid 21's evidence falls short of the kind we previously found to have created triable issues in fair use defenses. In *EMI Catalogue*, there was evidence that the defendant first "contemplated paying for the right" to license the plaintiff's song, determined the cost of doing so was too high, and then asked its sound studio to find a similar song instead. *See id.* In *Tiffany*, the plaintiff (Tiffany) submitted as evidence an internal email from an employee of the defendant (Costco) "indicating that Costco's jewelry boxes should have a more 'Tiffany or

upscale look,'" testimony that a Costco employee ignored emails indicating customer and employee confusion over the source of its jewelry, and evidence that Costco shared links to Tiffany's website in communications with vendors. *See* 971 F.3d at 88; *see also Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1009 (3d Cir. 1991) (defendant breached agreement with plaintiff not to use plaintiff's mark). There is no similar evidence here that Breitling intended to mislead its customers as to the source of its products or reap the benefits of any goodwill Solid 21 purportedly created surrounding the term "red gold."[13]

Lastly, Solid 21 cites as evidence that Breitling did not begin using the term "red gold" until 2010—over two decades after Aire first used it. Even viewed in a light most favorable to Solid 21, this evidence does not show that Breitling intended to confuse its customers as to source or sponsorship. Solid 21 submitted no evidence that Breitling was actually aware of Solid 21's trademark. In any event, constructive or actual knowledge "has no tendency to show bad faith" where Breitling was "fully entitled to use"—and did use—"red gold"

---

[13] There is evidence to the contrary. In the handful of instances when consumers asked Breitling about the meaning of "red gold," Breitling did not indicate Solid 21 as a source or sponsor. Rather, Breitling described "red gold" as an attribute. *See* JA at 4720 (Q: "Whats [sic] the difference between rose gold and red gold" A: "They are both a rose gold *color*") (emphasis added)).

descriptively. *Car-Freshner*, 70 F.3d at 270. There is no genuine issue of fact as to Breitling's good faith; it has met its burden on each of the elements of fair use.

* * *

Finally, a few words regarding our colleague's dissenting view. The dissent states that our analysis "effectively eliminates the good-faith prong," such that if "a defendant's use is descriptive… it is also in good faith." Dissent at 3. Not so. As demonstrated above, a defendant's descriptive use does not end the fair use inquiry. *See supra* at 21–26. We simply recognize that the defendant's burden to establish both descriptiveness and good faith does not come with an additional requirement to categorize evidence as exclusively relevant to one or the other. *See supra* at 22–23. That there was also no genuine issue of fact as to Breitling's good faith in this case does not foreclose a genuine issue of fact as to a defendant's good faith in other cases. Despite the dissent's concern, summary judgment is always a matter of the record.

## CONCLUSION

We have examined Solid 21's remaining arguments and conclude that they are without merit. We **AFFIRM** the judgment of the district court.

26

PARK, *Circuit Judge*, dissenting:

We don't know why Breitling began using the disputed "red gold" mark in 2010. But the majority still concludes that Breitling proved good-faith fair use, and to get there, it resolves factual disputes about Breitling's mental state at summary judgment. I respectfully dissent because those are issues for a jury to decide.

A trademark defendant raising a fair-use defense has the burden to show that it did not act in bad faith—*i.e.*, that it lacked "the intent to sow confusion between the two companies' products." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 88 (2d Cir. 2020). This turns on a fact-intensive, totality-of-the-circumstances judgment; the jury must consider "*[a]ny* evidence that is probative of intent to trade on the protected mark." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000) (emphasis added). So "we have consistently observed" that the good-faith element is "singularly inappropriate for . . . summary judgment." *Tiffany & Co.*, 971 F.3d at 88. The majority sees this as a case in which "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). I disagree.

The main question on good faith is why Breitling decided to start using "red gold" instead of "rose gold" to sell some of its watches, which otherwise remained the same. This apparently occurred in 2010, well after Solid 21 trademarked the term. And "where the allegedly infringing mark is identical to the registered mark, and its use began subsequent to the plaintiff's trade-mark registration, the defendant must carry the burden of explanation." *Tiffany & Co.*, 971 F.3d at 88. Neither Breitling nor the majority has

even attempted to provide a plausible explanation for the sudden change.[1]

Against the backdrop of this unanswered question, Breitling admits that it began its "red gold" marketing without conducting a trademark search. To be sure, this failure was not *per se* bad faith. But in general, and particularly when there is uncertainty, a trademark search is consistent with good faith, and the lack of it is consistent with bad faith. *See Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996) (reversing a grant of summary judgment to a defendant who "neither consulted with an attorney nor conducted a trademark search").[2]

There are more reasons why a jury might not give Breitling the benefit of the doubt. It could find that Breitling had actual or constructive knowledge of Solid 21's "red gold" mark, which was repeatedly covered in trade and popular publications before Breitling's use. Again, everything is relevant, and nothing is dispositive. *See, e.g.*, *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995) ("Prior knowledge of a senior user's trade mark

---

[1] The majority explains that "red gold" is a longstanding scientific description of a particular gold alloy. *See* Maj. Op. at 5-6. This has two problems. First, as a logical matter, it attempts to explain a change with a constant. And second, as a factual matter, the evidence shows that Breitling used "red gold" and "rose gold" interchangeably, not to describe two scientifically distinct alloys.

[2] In the only case in which we appear to have affirmed a grant of summary judgment on good faith despite the lack of a trademark search, *Savin Corp. v. Savin Grp.*, 391 F.3d 439 (2d Cir. 2004), the failure to perform the search was harmless because the mark was registered for use only in a different industry, *see id.* at 460. That is not the case here.

does not *necessarily* give rise to an inference of bad faith." (emphasis added)).   A reasonable jury could find that Breitling knew about the "red gold" mark and used it anyway, which would undercut its claim of good faith.   *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 313 (2d Cir. 2013) (collecting cases).

Finally, there is evidence that Breitling's prior use of "rose gold" was not just an adequate substitute for "red gold," but a superior one.   For example, Solid 21 presented an affidavit from a former senior executive at competitor watchmakers stating that "red gold" is not a term used by luxury-watch consumers, as well as survey evidence that consumers do not consider "red gold" a potential watch material.   "The availability of other descriptive terms and a decision not to use one of those terms is . . . evidence of bad faith."   *EMI*, 228 F.3d at 67.   This is especially true when the alternative is both known to the defendant and a better descriptor.

In short, the record shows that Breitling (1) relatively recently began using the "red gold" mark, (2) without conducting a trademark search, (3) possibly knowing of Solid 21's use, (4) despite previously using a substitute, "rose gold."   In response, Breitling offers no explanation for the change whatsoever.   To my mind, a reasonable jury could find bad faith based on those facts.

The majority reasons that Breitling acted in good faith because its use was descriptive.   *See* Maj. Op. at 23.   But this sequencing effectively eliminates the good-faith prong.   Under the majority's reading, either (1) the defendant's use is descriptive, in which case it is also in good faith, or (2) the defendant's use is not descriptive, in which case it cannot show fair use and its good faith doesn't matter.

3

This approach minimizes good faith as an independent element of a fair-use defense. *See, e.g., Tiffany & Co.*, 971 F.3d at 92.

In any case, the descriptiveness question also should go to the jury. First, we "more readily find a phrase descriptive when it is in common usage," *Kelly-Brown*, 717 F.3d at 311, and Solid 21's evidence tends to show that "red gold" lacks a meaning to consumers. For example, its witness opined that "'Red Gold' is not a metal, but a marketing tool" associated uniquely with Solid 21 and not otherwise used in the industry. App'x at JA-3646 to -49. Second, the availability of "other terms . . . to describe the pertinent characteristic" counsels against finding a use descriptive. *EMI*, 228 F.3d at 65. As discussed above, Breitling in fact used the common term "rose gold" to describe its watches (rather than Solid 21's "red gold" mark) up until its unexplained change in 2010.

The fair-use analysis in this case is not obvious. The parties briefed it exhaustively. The district court itself was of two minds— it initially denied summary judgment, then granted it on reconsideration. A different district court in this circuit recently denied summary judgment on fair use in a related case.[3] And now we do not agree either. We have counseled district courts to use summary judgment with restraint in cases involving questions of good faith. *See Tiffany & Co.*, 971 F.3d at 88. We should follow our own advice. I respectfully dissent.

---

[3] *See Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV-1262-LGS, 2023 WL 3996530 (S.D.N.Y. June 14, 2023).